## MUSKOGEE ELECTRIC TRACTION CO. v. DUNNAM.

No. 16806. Opinion Filed Jan. 24, 1928.

(Syllabus.)

**1. Appeal and Error—Error Invited or Acquiesced in—Change of Theory on Appeal.**

A party on appeal in the Supreme Court will not be permitted to secure a reversal of a judgment upon error which he has invited and acquiesced in, or assume a position inconsistent with that taken in the trial court.

**2. Same—Harmless Error.**

An assignment of error that fails to show any resulting injury to plaintiff, or that any of his constitutional or statutory rights were violated, is not sufficient to work a reversal of judgment.

**3. Appeal and Error—Damages—Excessiveness of Damages—Verdict for $5,000 for Permanent Injuries, Including Broken Leg, Affecting Earning Capacity, Held not Excessive.**

In an action for personal injury the jury is charged with the duty to fix the amount of damages, and its verdict will not be set aside for excessive damages, unless it clearly appears that the jury committed some gross and palpable error or acted under some improper bias, influence or prejudice, or has totally mistaken the rules of law by which the amount of damage is fixed. Held, that in the instant case the damages fixed by the jury are not excessive for the substantial injury suffered by plaintiff in this action.

Error from District Court, Muskogee County; Enloe V. Vernor, Judge.

Action by E. D. Dunnam against Muskogee Electric Traction Company. Judgment for plaintiff, and defendant appeals. Affirmed.

C. A. Summers, for plaintiff in error.

Linebaugh, Pinson & Fite, for defendant in error.

RILEY, J. E. D. Dunnam, as plaintiff below in this action against Muskogee Electric Traction Company, by the judgment of the court based upon the verdict of a jury, secured judgment of $5,000, compensating him for personal injuries resulting from a crossing accident. The defendant maintained an electric line from Muskogee to Hyde Park, a distance of seven miles northeast of that city, using such line for both passenger and freight traffic. At the point where the accident occurred, defendant's line runs in an easterly direction and is crossed by a public highway running north, the same being a country crossing. Defendant's electric motor car was pushing a regular freight or box car in front of it; the freight car collided with the automobile driven by plaintiff's brother-in-law and in which plaintiff, his wife, and daughter were riding. The automobile was carried eastward and demolished; plaintiff received numerous bruises and other injuries, from which he alleged he suffered partial paralysis.

The defendant complains of 22 errors and argues them under three propositions.

The first proposition involves instructions Nos. 5 and 7, given by the court below and excepted to by defendant, to the effect that it was the duty of the defendant traction company to have a steam whistle on its electric car and to blow the same at least 80 rods before reaching the crossing, as provided by section 5531, C. O. S. 1921, which is as follows:

"A bell of at least 30 pounds in weight, or a steam whistle, shall be placed on each locomotive engine, and shall be rung or whistled at the distance of at least 80 rods from the place where the said railroad shall cross any other road, or street, under a penalty of $50 for every neglect, to be paid by the corporation owning the railroad, one-half thereof to go to the informer, and the other half to the state, and shall also be liable for all damages which shall be sustained by any person by reason of such neglect."

The defendant contends that section 5531, C. O. S. 1921, applies to steam railroads and not to street railways or interurban railways, and cites many authorities in support of its contention, some of them being: Hicks v. Citizens Ry. Co. (Mo.) 27 S. W. 545; Muncie St. Ry. Co., v. Maynard (Ind. App.) 32 N. E. 343; Citizens St. Ry. Co. v. Albright (Ind. App.) 42 N. E. 238; Patrick Lyman v. Union Ry. Co., 114 Mass. 83; Holmgren v. St. Paul City Ry. Co. (Minn.) 63 N. W. 270; Shea v. St. Paul City Ry. Co. (Minn.) 52 N. W. 902, to the effect that the rule applicable to steam railroads, in cases involving the question of negligence, does not apply to horse or street railways.

The plaintiff asserts the case of Muskogee Traction Co. v. Doering, 70 Okla. 21, 172 Pac. 793, settled the proposition in holding that an electric street or suburban railway was within the meaning and purview of the general railroad laws of the state requiring railroad companies to fence their rights of way, and that if such traction companies are within the purview of the general railroad laws of the state for the fencing statute and protection of livestock, they are within the purview and meaning of the general railroad laws of this state for the protection of individuals traveling the state's highways, citing: 22 R. C. L. 743: Diebold v. Ky. Traction Co., 117 Ky. 146, 77 S. W. 674; Lake Superior & Miss. R. Co. v. U. S., 93 U. S. 442, 23 L. Ed. 965.

It is not necessary to decide this question herein, for even if the trial court erred in giving the instructions complained of, defendant invited such error, as we hereinafter set out, and under the authorities which we shall cite it will not be heard to complain on appeal for the alleged error.

In plaintiff's petition for rehearing heretofore filed, it is said:

"At defendant's request, the court gave paragraphs 11 and 18 of the general charge."

And in response defendant says:

"On the other hand, the plaintiff in error did not waive its objection and exception to this instruction by going ahead with the trial and fighting its way through the best it could under the handicap placed upon it by this erroneous instruction."

Instruction No. 11, given and excepted to by plaintiff, informed the jury:

"You are further instructed that where a person riding in an automobile desires to cross a railroad track at a regular crossing and goes on to the track without looking or listening for the approach of trains and the train strikes the automobile in which such person is riding and injures such person, and the evidence on the part of the defendant company shows that a whistle was blown at the regular place and kept blowing as it approached the crossing and the plaintiff did not look or listen before driving on the railroad, he is not entitled to recovery if injury results from a collision at said crossing."

Instruction No. 18 directs that if plaintiff, amongst other things, "failed to take heed of the whistle sounded by the agents, servants, and employees of the defendant, warning of the approach of defendant's cars to the crossing, **if said whistle was sounded as required by statute,**" etc., and such failure of the plaintiff to exercise such care contributed to his injury as a proximate cause thereof, the verdict should be for the defendant.

It is obvious that in instruction 11, referring to the fact "that a whistle was blown at the regular place and kept blowing as it approached the crossing," application was intended to section 5531, supra, which fixes the regular place to blow the whistle, so in instruction No. 18, the phrase "if said whistle was sounded as required by statute" can only refer to the statute mentioned, which prescribes the sounding of whistles by locomotives, for the very simple reason that it the only such statute.

The request for instructions Nos. 11 and 18 indicates the theory of the case adopted by counsel for defendant. and that theory was that section 5531, supra, was applicable to electric railroads; furthermore it was that defendant was required by some statute to provide a whistle or bell, and to sound in a certain manner, at a certain place. Whether that theory adopted and followed by both plaintiff and defendant below is right or wrong is not decisive of this appeal, for a party will not be permitted to urge a different theory on appeal from that on which he submitted the cause in the trial court. Abraham v. Wasoff, 111 Okla. 165, 239 P. 138: Beaty v. Beaty, 114 Okla. 5, 242 Pac. 766.

It seems that the evidence adduced on both sides was upon the same theory as set out in the requested instructions. In the case of Wallace v. Duke, 44 Okla. 124, 142 Pac. 308, in such a case, this court said:

"The defendant will, as has been held by this court, not be allowed to depart from the theory upon which case was tried in the lower court, and thus escape from the obligations of what appears to be a most just and meritorious judgment."

In Summers v. Gates, 55 Okla. 96, 154 Pac. 1159, this court held that the acquiescence in an erroneous theory of a case is equivalent to an invitation to commit such error, by saying:

"While the court did not give the instruction offered, yet the one offered requested that this particular phase of the case be submitted to the jury, and inasmuch as the defendant invited the court's attention to this phase of the case and requested an instruction upon it, we think they are not in a position to be heard to complain upon this ground, for certainly one cannot invite error and then complain of it."

Again, in St. L. & S. F. Ry. Co. v. Hodge, 53 Okla. 427, 157 Pac. 60, it was held:

"Instructions to the jury that are in substantial compliance with those requested cannot be made the ground of reversal at the instance of the party requesting them."

Here the instructions complained of, because they set out the statute, are upon the same theory as those in No. 11 and No. 18 of the court's charge, requested by the traction company. It would be inconsistent for the court to charge the jury that there was a statutory duty of some kind, without advising what it was. C., R. I. & P. Ry. Co. v. Morton, 57 Okla. 711, 157 Pac. 917; Okla. Union Ry. Co. v. Lynch, 115 Okla. 146, 242 Pac. 176.

In Hutchins v. Richardson, 100 Okla. 80, 227 Pac. 432, this court announced the rule stated in the first paragraph of the syllabus herein:

"A party on appeal in the Supreme Court will not be permitted to secure a reversal of a judgment upon error which he has invited and acquiesced in, or assume a position inconsistent with that taken in the trial court." Doggett v. Doggett, 85 Okla. 90, 203 Pac. 223.

From the authorities set out it is the rule in this state that acquiescence in error or invitation to commit error in the court below or the assumption of a contrary theory of the case on appeal is unavailing as a reason for reversal of the cause.

There is another reason why we must ignore this plea. The plaintiff below charged the defendant with negligence in the operation of its railway. The plaintiff did not plead section 5531, supra, complained of. It became the duty of the trial judge to instruct the jury upon issues presented, one of which was "the failure to blow the whistle or give any signal of the approach of the cars to the crossing." The court gave the statutory instruction complained of. In case of reversal it would become the duty of the trial court to instruct again upon this issue of negligence. Can we say that, in case we should adopt defendant's theory on appeal and reverse the case and the court below instructs as to this theory upon the common-law duties of the defendant railway company rather than the statutory duties, that the result would be different? Certainly not. Then, if error, it was not prejudicial, but harmless. Curtin v. Moroney, 117 Okla. Cr. 276, 246 Pac. 232.

"An assignment of error that fails to show any resulting injury to plaintiff, or that any of his constitutional or statutory rights were violated, is not sufficient to work a reversal of judgment." Sequoyah Oil & Refg. Co. v. Sunday, 101 Okla. 44, 223 Pac. 665.

The burden is upon the plaintiff in error to show where the error complained of was prejudicial. Here instruction No. 11 of defendant places before the jury that there was a regular place for blowing the whistle, and that it was kept blowing from that regular place to the crossing.

These are certainly the essential features of the statute. The fact that the whistle was operated by some means other than steam would not influence the jury as to the issue here. The testimony showed that the "regular place" for blowing the whistle was 80 rods from the crossing (C.-M. p. 212); that it was a loud whistle, which could be heard three miles (C.-M. p. 213)— this the evidence of defendant company. So, it having injected the facts, under the accepted theory below, how could the statement of the statute prejudice it when the statute embodies the very facts which the defendant sought to prove? This the defendant has failed to answer. The burden is upon it. The defendant's first proposition must fail.

It is next contended that the court erred in giving that portion of instruction No. 17 which instructs the jury:

"You are further instructed that if you find by a preponderance of the evidence, * * * failed to have one of its employees upon the front end of said train to keep a lookout for persons traveling along said highway, and to give warning of the approach of said train to said crossing. * * *"

The defendant cites the case of Duame v. C. & N. W. Ry. Co. (Wis.) 40 N. W. 394, to the effect:

"In such case it was the duty of the railroad company to have had someone on the rear car, or in some position where he could have seen that no one was about to cross the track before it was backed down over the crossing, to give the deceased timely warning, and to signal the train to stop, if there was danger of a collision."

The complaint here is that the court instructed the jury that if defendant failed to have a lookout on the front end of its box car, it was negligence.

Mr. Bullard, witness for defendant, testified that the rules require that a man ride on the leading car so that he may observe the track and signal the engineer if necessary, and further:

"I agree on that, that a man must be on the leading end, and that is somewhere where he can see, of course."

Mr. Ossenkopp testified for defendant:

"Q. Was there a man on the freight car? A. Yes, sir. Q. Where was he? A. Either going up or coming down. Q. On the back end? A. No. Q. I mean the rear or the front? A. Back toward the motor at the front end. Q. There wasn't any man on top when this accident happened? A. No, sir. Q. And there was no man on top? A. He was either coming down or going up. Q. The ladder on the car? A. Yes, sir. Q. And the ladder is on the rear of the car? A. Yes, sir."

Bullard's testimony sets forth the rule practically the same as used by the court.

In K. C. So. Ry. Co. v. Craig, 82 Okla. 1, 198 P. 578, this court said:

"Where a railway company, by its agents, servants, and employees, is switching its cars in its yards at a place where its right of way and yards are used as a footpath by a large number of people at all times of the day in going from one part of the town to the other, and such servants and employees of the railway company make what is known as a 'flying or kicking switch,' and the cut of cars so switched are permitted to run down the track without having any person on them to control their movement or give warning of their approach, and cross the footpath so used by pedestrians, this constitutes negligence on the part of the railway company." Eppstein v. Mo. Pac. Ry. Co., 197 Mo. 720; 94 S. W. 967; Chesapeake & O. R. Co. v. Nipp (Ky. App.) 100 S. W. 246; Garner v. Trumbull, 36 C. C. A. 361, 94 Fed. 321; Arrowood v. So. Car. & G Ext. R. Co. (N. C.) 36 S. E. 151.

The assignment is without merit.

It is next contended that the judgment is excessive.

Considering the injuries received from the view evidently accepted by the jury, based upon the evidence such as that of Dr. Ed Smith: "In my judgment the injuries which he received are permanent, and the functions will never be restored," the evidence of the doctor as to a broken bone of the leg, the jury's view of plaintiff, and evidence of his earning capacity before and after the injury, we cannot say the verdict is excessive. Muskogee Elec. Trac. Co. v. Wimmer, 80 Okla. 11, 194 Pac. 107; Okla. Prod. & Refg. Co. v. Freeman, 88 Okla. 166, 212 Pac. 742; Sand Springs Ry. Co. v. Westhafer, 92 Okla. 89, 218 Pac. 525.

The judgment is, therefore, affirmed.

BRANSON, C. J., MASON, V. C. J., and LESTER, CLARK, and HEFNER, JJ., concur. HUNT, J., dissents. HARRISON, and PHELPS, JJ., absent, not participating.

Note.—See under (1) 4 C. J. p. 700. §2606; p. 719, §2635; 2 R. C. L. p. 238; 1 R. C. L. Supp. p. 466; 4 R. C. L Supp. p. 96; 5 R. C. L. Supp. p. 86; 6 R. C. L. Supp. p. 80. (2) 4 C. J. p. 908, §2878; 2 R. C. L. p. 230; 1 R. C. L. Supp. p. 462; 4 R. C. L. Supp. p. 95; 6 R. C. L. Supp. p. 79. (3) 4 C. J. p. 872, §2847; 17 C. J. p. 1057, §361; p. 1107, §438; anno. L. R. A. 1915F, 30; 40 A. L. R. 1230.